UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY ANN KERRIGAN, <br><br> Plaintiff, <br><br> v. <br><br> QBE INSURANCE CORPORATION, a foreign insurance company, <br><br> Defendant. | Case No. C16-1637 RSM <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant QBE Insurance Corporation ("QBE")'s Motion for Summary Judgment. Dkt. #36. QBE argues that most of Plaintiff Mary Ann Kerrigan's claims are untimely and that all claims can be dismissed on summary judgment on the merits. Ms. Kerrigan opposes this Motion. Dkt. #41. For the reasons set forth below, the Court GRANTS QBE's Motion and DISMISSES all claims in this case.

## I. BACKGROUND

In 2013 Ms. Kerrigan submitted a claim to QBE for property damage to her house in Everett, Washington. QBE provided coverage for plaintiff's house under policy number Q-5417334, for the policy period of July 23, 2013 – July 23, 2014. Dkt. #38-1 at 3. The policy has a policy limit of $285,000, with a $1,000 deductible. *Id.* The policy covers "physical loss

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

to property". *Id*. at 10. The policy does not cover the contents of the dwelling. *Id.*; *see also* Dkt #37-1 at 12 (Deposition of Ms. Kerrigan). Importantly, the policy does not cover losses caused by "wear and tear, marring, deterioration… [or] domestic animals," and excludes coverage for "neglect," as well as loss caused by "faulty, inadequate or defective… maintenance." Dkt. #38-1 at 11–12. The policy contains a one-year contractual limitations provision stating, "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." *Id*. at 13.

On August 23, 2013, Ms. Kerrigan notified QBE of damage caused to her home by vandalism. *Id.* at 65. QBE asked Audit Services, Inc. to appoint an independent adjuster to review plaintiff's claimed damages, and to conduct an inspection of the house. Dkt. #38 at 2. ASI then retained Claims Adjustment Services ("CAS"), who in turn retained an independent adjuster to perform the investigation. *Id.*

By letter dated September 4, 2013, QBE informed Ms. Kerrigan of the results of the investigation, and announced its decision that her policy did not provide coverage for portions of her claim. Dkt. #38-1 at 76–79. The four-page letter noted that the policy did not cover wear and tear, neglect, or improper maintenance, and proceeded to detail by list what was and was not being covered. *Id*. Notably, the letter stated "under the terms of the Policy, there is a suit limitation provision requiring any suit or action with regard to a claim to be filed within 1 year after the above captioned date of loss." *Id*. at 79. The letter proceeded to calculate the tolling of the suit limitation period for claim investigation, and announced that "the suit limitation will expire on August 28, 2014." *Id*. The letter announced that QBE was closing its file on the matter. *Id*. Along with the letter, QBE issued a check for $2,409.63. *Id.* at 78.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

Ms. Kerrigan hired her own investigator, a representative from a company called Mr. Handyman, to conduct a separate investigation. Mr. Handyman delivered an estimate of over $21,000 for repairs. Dkt. #41-7. However, Mr. Handyman and QBE's investigations were different in scope. QBE's investigation was looking for damage to the property from vandalism, not damage caused by wear and tear, which is not covered under the policy; Mr. Handyman's investigator was not aware of the need to distinguish between these two sources of damage. *See* Dkt. #37-1 at 13–14. Upon being advised that plaintiff disputed its valuation of the purported damages, QBE re-opened the claim. *See* Dkt. #38-1 at 83. QBE hired another person to inspect the house, and eventually sent a check for the additional sum of $2,268.66 with a letter dated October 15, 2013. Dkt. #38-1 at 86–89. That letter indicated that the contractual limitation period was tolled an additional day. *Id*. at 89.

Ms. Kerrigan filed this lawsuit in Snohomish County Superior Court on September 12, 2016. Dkt. #1-1. It was removed here on October 19, 2016. Dkt #1. The Complaint pleads causes of action for statutory bad faith, breach of fiduciary duty under certain regulations, violation of the Insurance Fair Conduct Act ("IFCA"), breach of the state Consumer Protection Act ("CPA"), common law negligence, the tort of outrage, "exemplary damages" under IFCA, and for "declaratory judgment/injunctive relief." Dkt. #1-1 at 2–4.

QBE filed the instant Motion on October 10, 2017. Dkt. #36. Ms. Kerrigan filed her Response brief on October 30, 2017, along with a declaration and several exhibits. Dkt. #41.

## II. DISCUSSION

### A. Evidentiary Issues and Surreply

The Court will first address QBE's motion to strike the declaration of Ms. Kerrigan, relied on in the Response, as improperly signed with "//M-A B Kerrigan//" in the signature line

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

instead of a pen signature. Dkt. #42 at 3 (citing Dkt. #41-1). This declaration provides a factual background to this case from Ms. Kerrigan's personal knowledge and authenticates several pictures of damage to her home. The Court finds that Ms. Kerrigan's signature is improper on this declaration, but the Court will consider Ms. Kerrigan's statements and her photo exhibits as it is evident to the Court that Ms. Kerrigan's error was essentially a scrivener's error. The Court bases this conclusion in part on Ms. Kerrigan's improper Surreply, Dkt. #44. In this District, surreplies may only be filed to strike material contained in a reply brief and must be preceded by a notice of intent to file. LCR 7(g). Ms. Kerrigan's counsel has not followed these procedures and is advised to review Local Rule 7 and especially Local Rule 7(m) for the procedure to file a praecipe to correct an error in filing.

Ms. Kerrigan's declaration also attempts to authenticate several estimates for repair to the damage to her home. QBE moves to strike these exhibits. Dkt. #42 at 4. The Court finds that Ms. Kerrigan cannot speak to the truth of the matters contained in these documents, only that she received them. The Court will not consider these documents for the truth of the matter asserted. *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773–74 (9th Cir. 2002).

**B. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco,*

*Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

Under Washington law, interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). When interpreting an insurance policy, "ambiguities are resolved in favor of the policyholder." *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251, 252 (1987) (citing *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986)). "The terms of a policy should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Overton*, 145 Wn.2d at 424.

### C. Claims barred by the Contractual Limitations Clause

#### a. Declaratory Judgment/Injunctive Relief Claim

QBE argues that the declaratory judgment/injunctive relief claim is barred by the Policy's one-year contractual limitations provision and applicable state law. Dkt. #36 at 11

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

(citing RCW 48.18.200(1)(c); *Logan v. North-West Ins. Co.*, 45 Wn. App. 95, 97-98 (1986); *Northwest Farm Credit Services, FLCA v. IDS Property*, 2014 WL 3695998, *3 (W.D. Wash. 2014)). QBE argues that the provision is unambiguous and notes that it was "highlighted" to Ms. Kerrigan in letters dated September 4, 2013, and October 15, 2013. *Id*. at 12.

Ms. Kerrigan does not adequately respond to this argument in her Response. She states at one point that "the negligence and outrage claims are by no means barred under the Contract Limitations policy of this agreement" (Dkt. #41 at 14), but she does not cite authority or otherwise expand on this thought. Ms. Kerrigan states that because she "filed this lawsuit on September 12, 2013, her causes of action meet unquestionably any statute of limitations of three years." *Id.* at 3. The Court assumes "2013" is a typo, because the record shows this case was filed on September 12, 2016. *See* Dkt. #1-1. In any event, addressing the *statute* of limitations does not help the Court rule on the contractual limitations clause issue.

A contractual limitation provision in an insurance policy applies to "the parties' contractual relationship and claims arising out of it," not "claims asserting a violation of the CPA" or other claims arising under an independent source of law. *O'Neill v. Farmers Ins. Co. of Washington*, 124 Wn. App. 516, 530 (2004) (citing *Simms v. Allstate Ins. Co.*, 27 Wn. App. 872, 621 P.2d 155 (1980)). A contractual limitation provision is applicable to an insured's claim seeking a declaratory judgment. *See Northwest Farm*, 2014 WL 3695998, *2-4.

The Court finds that Ms. Kerrigan failed to file this claim within the unambiguous one-year contractual limitation period above. Ms. Kerrigan raises no facts or argument to explain or otherwise circumvent this defense. Ms. Kerrigan's Declaratory Judgment/Injunctive Relief claim clearly arises out of her contractual relationship with QBE. *See* Dkt. #1-1 at 4.

Accordingly, the Court will dismiss Ms. Kerrigan's declaratory judgment/injunctive relief cause of action, and any other claim arising solely from the contract.

      **b.** Negligence and Outrage Claims

QBE argues the claims of negligence and outrage should also be barred under the contractual limitations provision as they arise solely from the contractual relationship and are not based on some independent statutory source of law. For evidence of this, QBE cites the Complaint as stating that these claims rely on QBE's purported failure "to pay full benefits arising from plaintiff's loss." Dkt. #36 at 13 (citing Dkt. #1-1 at ¶2.3).

In Response, Ms. Kerrigan argues that her claim of negligence exists outside the contractual obligations and her claim for common law bad faith, essentially remaining solely as a claim for negligent claim handling. Dkt. #41 at 13 (citing *Merriman v. American Guar. & Liability Ins.*, 396 P. 3d 351, 362 (2017)). Ms. Kerrigan addresses her claim of outrage, but fails to set forth a factual or legal basis for her claim to exist outside the contractual relationship with QBE.

Ms. Kerrigan has adequately established that her claim of negligence can exist outside the contractual relationship. However, the Court finds that Ms. Kerrigan has neither pled nor argued a basis for her outrage claim to exist independently. It appears that the outrageous conduct alleged was the denial of coverage alone, thus these claims arise from the contractual relationship and are dismissed as untimely.

**D. Claims barred by the Statute of Limitations**

QBE argues that Ms. Kerrigan's claims of common law bad faith, negligence, outrage, and breach of fiduciary duty should be dismissed under the state three-year statute of limitations for such claims and that Ms. Kerrigan was aware of her ability to assert these claims

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

as early as September 4, 2013, but did not file until September 12, 2016. *See* Dkt. #36 at 14–15 (citing *O'Neill*, 124 Wn. App. at 529-30 ("[C]laims for bad faith are subject to a three-year statute of limitations."); *Washington v. Boeing Co.*, 105 Wn. App. 1, 18 (2000) ("Negligence claims are subject to the three-year statute of limitations."); *Cox v. Oasis Physical Therapy, PLLC*, 153 Wn. App. 176, 192 (2000)). QBE cites Washington law indicating that an insured's cause of action against the insurer accrues at the time his or her claim for coverage is initially denied. Dkt. #36 at 14 (citing *Lenk v. Life Ins. Co. of North America*, 2010 WL 5173207, *2 (E.D. Wash. 2010).

In her Response, Ms. Kerrigan admits that QBE sent a decision letter "on or around September 5, 2013," but argues that her claim was not ripe until October 2013 when she received the adjusted coverage decision and second check. Dkt. #41 at 2–3. Ms. Kerrigan argues that "her causes of action meet unquestionably any statute of limitations of three years," but cites to no case law to support her position, and fails to address *Lenk* or QBE's related arguments. *Id*. at 3.

The limitations period starts when a cause of action accrues. "A cause of action accrues when a party has the right to seek relief in the courts." *Crownover v. Dep't of Transp.*, 165 Wn. App. 131, 141, 265 P.3d 971, 977 (2011) (citing *Colwell v. Eising*, 118 Wn.2d 861, 868, 827 P.2d 1005 (1992)). The Court does not believe it is always the case that an insured's cause of action accrues at the time his or her claim for coverage is initially denied, as the discovery rule outlined in *Green v. A.P.C.*, 136 Wn.2d 87, 96 (1998) involves a more nuanced inquiry. However, the facts of this case mirror those in *Lenk*, where an insured received a similar initial denial letter more than three years before the action was filed, and where there were subsequent appeals of that initial denial that were not considered by the court to extend the starting point

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

for the limitations period. *See* 2010 WL 5173207. Given the facts of this case, the Court concludes that all the elements of her claims were present and Ms. Kerrigan had the right to seek relief in the court by September 4, 2013. Ms. Kerrigan did not file this action within three years of this date. Although her filing date was only a few days after this period expired, she has not made any argument for equitable tolling and the Court cannot conceive of such an argument. The claims of common law bad faith, negligence, outrage, and breach of fiduciary duty claims are dismissed as untimely.

E.  **Remaining CPA and IFCA Claims**

Ms. Kerrigan's remaining claims arise under statute and are not subject to QBE's timeliness affirmative defenses. QBE moves to dismiss these claims, essentially arguing that its investigation of the claim was unquestionably reasonable and that this is dispositive for both claims. Dkt #36 at 17 (citing *GCG Associates LP v. American Cas. Co. of Reading Pennsylvania*, 2008 WL 3542620, *7 (W.D. Wash. 2008)); Dkt. #42 at 11. QBE argues that Ms. Kerrigan "has no evidence whatsoever that QBE acted unreasonably." Dkt. #36 at 18. QBE relies on statements made in Ms. Kerrigan's deposition, and attacks Ms. Kerrigan's lack of evidence. QBE argues that Ms. Kerrigan cannot question the amount of the estimates provided by QBE's investigators by comparing it to the Mr. Handyman estimate, because the Mr. Handyman estimate was made "without regard to coverage," and because a "mere number comparison" approach is "inadequate to show bad faith." *Id.* at 21 (citing *Lloyd v. Allstate Ins. Co.*, 167 Wn. App. 490 (2012)).

Ms. Kerrigan has attempted to submit her own evidence showing that estimates for the damage total at least $72,954. Dkt. #41 at 4. However, as stated above, this evidence will not be considered for the truth of the maters therein. Ms. Kerrigan has no expert witness in this

case. QBE argues that Ms. Kerrigan's declaration contradicts her prior deposition testimony, where she stated that she could not say whether the QBE investigators missed any damaged property that should have been included in her report. Dkt. #42 at 2 (citing Dkt. #37-1 at 17). "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The Court finds that Ms. Kerrigan's declaration, to the extent that it contradicts her prior deposition testimony, does not create an issue of fact.

An insurer acts in bad faith if its denial of coverage is "unreasonable, frivolous, or unfounded." *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 38 P.3d 322, 329 (Wash. 2002). Ordinarily, whether an insurer acts in bad faith is a question of fact for the jury, unless reasonable minds could reach but one conclusion. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 78 P.3d 1274, 1277 (2003). Context is critical to determining whether an insurer committed bad faith. *See Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 17 P.3d 1229, 1236 (2001); *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 915 P.2d 1140, 1145 (1996) ("To determine whether [an insurer] acted reasonably, fairly, or deceptively, it is necessary to consider the circumstances surrounding the allegedly improper act."). Furthermore, the duty of good faith "is broad and all-encompassing, and is not limited to an insurer's duty to pay, settle, or defend." *St. Paul Fire and Marine Ins. v. Onvia, Inc.*, 165 Wn.2d 122, 196 P.3d 664, 669 (Wash. 2008). Thus, even where there would be no coverage or right to a defense under the policy terms, if an insurer mishandles a claim in bad faith, a cause of action based on this conduct remains viable. *Id.* at 668.

Given all the above, the Court finds that Ms. Kerrigan's bad faith claim, and thus her IFCA and CPA claims, rely on her own conclusory assertions that QBE's estimate was less

than a reasonable amount. Ms. Kerrigan presents no evidence that the jury could reasonably rely on to challenge the reasonableness of QBE's estimate. This is an essential element of these claims to which she has the burden of proof, and its absence can lead the Court to summary judgment dismissal. *See Celotex,* 477 U.S. 323, *Anderson,* 477 U.S. at 251. In light of the facts and circumstances of this case, the Court concludes that reasonable minds could only conclude that QBE's investigation was reasonable, and that Ms. Kerrigan's CPA and IFCA claims must therefore be dismissed. *See Smith*, *supra*.

### III. CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant QBE's Motion for Summary Judgment (Dkt. #36) is GRANTED. All of Plaintiff Kerrigan's claims are DISMISSED.

2) This case is CLOSED.

DATED this 7th day of December 2017.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11